NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JASON SHAPIRO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JACQUELINE H. BARNEA, et al.,<br><br>　　　　　　Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 06-811 (JBS)<br><br>**OPINION** |

APPEARANCES:

Jeffrey M. Scott, Esq.
Jared Burdette Shafer, Esq.
ARCHER & GREINER
One South Broad Street
Suite 1620
Philadelphia, PA 19103
　　and
Michael D. Homans, Esq.
FLASTER GREENBERG PC
1810 Chapel Avenue West
Cherry Hill, NJ 08002
　　Attorneys for Plaintiff

Andrea Janis Waye, Esq.
Nicholas Harbist, Esq.
BLANK ROME LLP
Woodland Falls Corporate Center
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
　　Attorneys for Defendants

**SIMANDLE, District Judge**:

　　This matter comes before the Court on the motion of

Defendants [Docket Item 2] to dismiss Plaintiff's claim for fraud (Count V of the Complaint).  Because the Court finds that the fraud claim was pled in the alternative, the contract's validity is in dispute, and a claim for fraud in the performance has been pled with sufficient particularity, the Court will deny the motion to dismiss in part, as further explained below.

I. **BACKGROUND**[1]

This action arises from the alleged failure of Defendants, Drs. Jacqueline and Eytan Barnea, ProPREG LLC and BioIncept LLC, to pay Plaintiff, Jason Shapiro, for his May 2004 to February 2005 employment as the Chief Executive Officer and Chief Financial Officer of ProPREG, which is a subsidiary of BioIncept, a company that the Barneas founded and own.

In late 2003, the parties began negotiating Plaintiff's employment with Defendants.  (Compl. ¶ 12.)  Pursuant to an oral agreement with the Barneas, Plaintiff began working fulltime as CEO and CFO of ProPREG on May 1, 2004.  (Compl. ¶¶ 14-15.)  The parties agreed that their oral understanding would later be formalized in a writing arranged by Plaintiff and Defendants' lawyer.  (Compl. ¶ 15.)  On June 11, 2004, Plaintiff and the Barneas, on behalf of ProPREG and BioIncept, entered into a written employment agreement ("the Agreement"), which was drafted

---

[1] The facts set forth here are those alleged in the Complaint.

by counsel for Defendants and signed by the parties.  (Compl. ¶¶ 16-17.)  The agreement provided Plaintiff with a salary of at least $100,000 per year plus equity in BioIncept and other compensation for his services from May 1, 2004.  (Compl. ¶18.)  While Plaintiff performed his duties as specified in the agreement until February 2005, Defendants failed to pay his salary or other compensation as the Agreement provided.  (Compl. ¶¶ 18-20.)

When Plaintiff complained to the Barneas, they assured him that payment would be forthcoming; Plaintiff trusted these assurances because he was engaged to a friend of the Barneas at the time.  (Compl. ¶¶ 21-22.)  When Plaintiff broke off his engagement with the woman in January 2005, the Barneas began reducing their communications with him.  (Compl. ¶¶ 24-25.)  By February 2005 they were completely unresponsive.  (Id.)  Plaintiff continued working sporadically for Defendants until May 2005 because potential funding sources and partners for ProPREG continued to contact him.  (Compl. ¶ 26.)  On June 1, 2005, Plaintiff gave written notice to ProPREG, the Barneas and their lawyer that he was resigning for "Good Reason," consistent with ¶ 9.5 of the agreement, and that he was seeking full compensation for his services as required under the agreement and the law.  (Compl. ¶ 27.)  Defendants refused to pay him and "construct[ed] an ever-changing web of lies as to why they would not pay him the

wages, compensation and benefits owed." (Compl. ¶ 28.)

Accordingly, on February 22, 2006, Plaintiff filed this action against Defendants, alleging breach of contract (Count I), violation of the Fair Labor Standards Act for failure to pay a minimum wage (Count II), violation of the Fair Labor Standards Act for failure to provide overtime pay (Count III), violation of the New York Labor Law (Count IV), fraud (Count V), and unjust enrichment. On May 5, 2006, Defendants filed this motion to dismiss [Docket Item 2].

**II. DISCUSSION**

    **A.   Rule 12(b)(6) Standard**

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Count V of the Complaint, which alleges fraud. A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A district court must accept any and all reasonable inferences derived from those facts stated in the Complaint. Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990). Further, the Court must view all allegations in the Complaint in the light most favorable to the plaintiff. See Scheuer, 416 U.S. at 236;

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The question before the Court is not whether the plaintiff will ultimately prevail; rather, it is whether that plaintiff can prove any set of facts in support of its claims that would entitle it to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the Complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the plaintiff, those allegations state a legal claim.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The Court will consider only the allegations in the Complaint, matters of public record, orders, and exhibits attached to the Complaint.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

However, while a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation.  See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993); Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1255 (M.D. Pa. 1994).  Moreover, even when the claims are not subject to Rule 9(b)'s heightened pleading

requirements, the claimant must set forth sufficient information to outline the elements of its claims or to permit inferences to be drawn that these elements exist.  See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Of course, fraud claims require greater specificity.  Fed. R. Civ. P. 9(b).

**B.    Fraud Claim**

1.    Preliminary Matters: Choice of Law Not Raised

The parties have not raised any choice-of-law issues in their briefing on this motion; therefore, the Court will assume, as the parties do, that New Jersey law applies.  It appears that the relevant conduct occurred in New Jersey and that the connection to New York is tenuous.  However, in his Complaint, Plaintiff alleges at least one claim that arises only under New York law.  If Plaintiff wished to make any argument that New York law applies to the fraud claim in Count V, he should have raised and briefed the complicated issue in response to this motion to dismiss.

The Court notes that the general elements of fraud claims are the same in New York and New Jersey.  To sustain a fraud claim under New Jersey law, a plaintiff must establish that (1) the defendant made a material representation (2) of a presently existing or past fact (3) which was false (4) and was known to be false by the defendant at the time it was made (5) and was made by the defendant for the purpose of inducing the plaintiff to

6

rely on the misrepresentation (6) and the plaintiff actually and reasonably relied upon the misrepresentation (7) and the plaintiff suffered injury as a result.  Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981)).  Similarly, "[u]nder New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).

However, a conflict may arise later as to the prima facie case because "[t]he New York Court of Appeals has recognized that 'a statement of present intention is . . . a statement of a material existing fact, sufficient to support a fraud action,'" Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co., 149 F.3d 134, 136 (2d Cir. 1998)(quoting Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 151 N.E.2d 833, 835 (N.Y. 1958)), and it is unclear whether New Jersey courts have done the same.

Furthermore, the states' laws may conflict with regard to whether the economic loss doctrine bars claims for fraud asserted concurrently with contract claims.  Neither New Jersey's nor New York's highest court has ruled on whether the economic loss doctrine applies to fraud claims.  New York law generally bars

tort claims that are merely redundant of breach of contract claims, but is unclear whether this rule applies to bar intentional torts such as fraud.

> It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated [Meyers v. Waverly Fabrics, 65 N.Y.2d 75, 80 n.2 (1985); North Shore Bottling Co. v Schmidt & Sons, 22 N.Y.2d 171, 179 (1968); Rich v. New York Cent. & Hudson Riv. R. R. Co., 87 N.Y. 382, 390 (1882).] This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract[. See id. at 398.]

Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987).  See also Computech Int'l, Inc. v. Compaq Computer Corp., 2004 U.S. Dist. LEXIS 9120, 28-29 (S.D.N.Y. 2004) ("The parties have not cited to any case in the New York courts applying the economic loss doctrine to an intentional tort, nor has one been found by the Court."); cf. Orlando v. Novurania of America, Inc., 162 F. Supp. 2d 220, 226 & n.2 (S.D.N.Y. 2001) (commenting that New York courts have not expressly stated economic loss rule does not apply to intentional torts, but taking this to mean that it applies and dismissing fraud claim as "barred by New York's economic loss rule").

In addition, there is authority in New York that the economic loss doctrine only applies to bar tort claims when there

is a contract for the sale of goods under the U.C.C. and that the doctrine has no application to situations in which the underlying contract is a service contract, as in this case. <u>Vitolo v. Dow Corning Corp.</u>, 234 A.D.2d 361, 362 (N.Y. App. Div. 1996).

Because the fraud claim raised here is a fraudulent performance claim raised in the alternative and, because the economic loss doctrine does not apply to claims raised in the alternative in either state, and because choice of law was not raised by the parties, the Court need not resolve the matter on this motion.

### 2. <u>Parties' Arguments</u>

While Defendants dispute the existence of a valid contract between the parties, they also argue that the fraud claim must be dismissed because (1) Plaintiff has failed to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements, (2) Plaintiff has not alleged that Defendants made any material misrepresentation of a presently-existing or past fact to induce Plaintiff to enter the employment agreement, and (3) the economic loss doctrine bars Plaintiff from pursuing a fraud claim when the alleged fraud is not extrinsic to the contract.

Plaintiff claims that (1) he has alleged his fraud claim with sufficient particularity; (2) he has alleged a material misrepresentation of an existing fact because the Complaint indicates that Defendants, at the commencement of the employment

9

relationship, intended to dishonor the promises they were making and (3) the economic loss doctrine does not bar his fraud claim because it is a claim for fraud in the inducement, which may coexist with the pursuit of contract remedies.

### 3. Fraud Claim Permitted in the Alternative

The Court will address the arguments as to the economic loss doctrine argument first.  The Court will not dismiss the claim under the economic loss doctrine because the economic loss doctrine does not apply when fraud is an alternative claim, permitted by Fed. R. Civ. P. 8(a), rather than a claim asserted concurrently with contract claims.  See Berger & Montague, P.C. v. Scott & Scott, LLC, 153 F. Supp.2d 750, 754 (E.D. Pa. 2001) ("even if the 'gist of action' test and 'economic loss doctrine' were to bar Berger from proceeding simultaneously on breach of contract and conversion claims, Berger can still plead both claims as alternative theories of liability... .").  In this case, the Complaint notes that the fraud claim is an "alternative" claim and Defendants dispute whether the Agreement is a valid, executed contract.  In general, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1995).  Thus, it is apparent that the economic loss doctrine should not apply when the validity of the contract – and

10

thus the entitlement to contractual remedies – is in dispute, as in this case. The purposes of the economic loss doctrine are to permit contracting parties to bargain for risk and to maintain a distinction between the provinces of contract and tort law principles; the Court will not apply the economic loss doctrine to bar Plaintiff's fraud claim while the validity of the contract itself remains in dispute.[2]

        4.    <u>Fraudulent Performance Pled with Particularity</u>

Furthermore, Fed. R. Civ. P. 9(b) does not mandate dismissal of the fraud claim because Plaintiff has pled fraudulent performance with sufficient particularity. The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984), <u>cert. denied</u>, 469 U.S. 1211

---

    [2] Although New Jersey courts will generally enforce choice-of-law provisions in contracts provided that the chosen law does not offend the public policies of New Jersey and the contract bears some "reasonable relation" to the chosen jurisdiction, <u>Pepe v. Rival</u>, 85 F. Supp. 2d 349, 381-82 (D.N.J. 1999), <u>Instructional Systems, Inc. v. Computer Curriculum Corp.</u>, 130 N.J. 324, 614 A.2d 124, 133 (1992), and this agreement contains a New Jersey choice of law provision, the provision was narrowly drafted to apply only to the "constru[ction] and enforce[ment]" of the Agreement; it does not apply to all claims arising out of the parties' employment relationship. Therefore, the Court must apply general choice of law provisions to determine whether New Jersey law applies to Plaintiff's fraud claim, which is not a claim for the construction or enforcement of the Agreement.

(1985). The Court should not focus exclusively on the Rule's particularity language, <u>Christidis v. First Penn. Mortgage Trust</u>, 717 F.2d 96, 100 (3d Cir. 1983), and must consider whether the pleading provides adequate notice to an adverse party to enable it to prepare a response, <u>Florian Greenhouse v. Cardinal IG Corp.</u>, 11 F. Supp. 2d 521, 526 (D.N.J. 1998) (citing 5A Wright and Miller, § 1298, at 648 (1990). "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Seville</u>, 742 F.2d at 791.

    In this case, the Complaint provides sufficient precision and substantiation with regard to Plaintiff's claim of fraudulent performance, but not of fraudulent inducement. Therefore, the Court will grant the motion to dismiss with regard to any claim for fraudulent inducement but deny it with regard to a claim for fraudulent performance. Plaintiff specifically alleged in the Complaint that while he was working for Defendants they ceased paying him as agreed. When he confronted them about this, they allegedly "assured him that full payment – for past due and currently due wages and benefits – would be made in the near future, and that he should trust them." (Compl. ¶ 21). Thereafter, Plaintiff claims, "Defendants failed and refused to

pay [him], and began to construct an ever-changing web of lies as to why they would not pay him the wages, compensation and benefits owed." (Compl. ¶ 28). These alleged misrepresentations of intent to pay were -- according to the Complaint -- made after the parties entered into the Agreement and established an ongoing employment relationship. Thus, when read in the light most favorable to Plaintiff, the allegations suffice to state a fraudulent performance claim (or a claim for breach of contract).

The fraud claim is permitted under only an alternative pleading theory if New Jersey law applies because the New Jersey economic loss doctrine bars fraudulent performance claims from proceeding concurrently with contract claims. The New Jersey Supreme Court has not determined whether the economic loss doctrine should apply to bar fraud claims, or for that matter, whether it applies to service contracts, but District of New Jersey courts have distinguished between fraudulent performance claims and fraudulent inducement claims and have found that New Jersey law bars fraudulent performance claims when contractual remedies exist. See, e.g., Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 144 (3d Cir. 2001)("The New Jersey District Courts still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action."); Unifoil Corp. v. Cheque Printers & Encoders, Ltd., 622 F. Supp. 268, 271 (D.N.J. 1985). See also Vanguard Telecommunications,

13

Inc. v. S. New England Tel. Co., 900 F.2d 645, 654 (3d Cir. 1990) (describing this area of law as a confusing "morass"); Christopher Faricelli, Note, Wading into the "Morass": An Inquiry into the Application of New Jersey's Economic Loss Rule to Fraud Claims, 35 Rutgers L.J. 717 (2004) (suggesting that New Jersey economic loss doctrine law be understood to permit fraud in the inducement claims). In other words, courts have held that plaintiffs pursuing breach of contract claims may also assert claims for fraudulent inducement, but may not assert claims for fraudulent performance. Id.; see Florian Greenhouse, Inc. v. Cardinal IG Corp., 11 F. Supp. 2d 521 (D.N.J. 1998) (permitting fraud claim in breach of contract case); Lo Bosco v. Kure Engineering Ltd., 891 F. Supp. 1020 (D.N.J. 1995) (same); First Valley Leasing, Inc. v. Goushy, 795 F. Supp. 693 (D.N.J. 1992) (same); Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171, 643 A.2d 649 (App. Div. 1994) (same); D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683, 619 A.2d 689 (App. Div. 1993) (same). But see Werner & Pfleider Corp. v. Gary Chemical Corp., 697 F. Supp. 808 (D.N.J. 1988) (dismissing commercial party's claims for common law fraud where buyer alleged seller sold machine without disclosing that it did not meet guaranteed production rate contained in sales contract because dispute was "essentially contractual in nature"). Because Plaintiff has only pled fraudulent performance with sufficient particularity, if the

fraud and contract claims were proceeding concurrently, the economic loss doctrine would bar Count V, under New Jersey law.

However, in this case Defendants dispute the validity of the contract and Plaintiff expressly indicates that the fraudulent performance claim is pled in the alternative.  It would be inappropriate to bar a claim for fraudulent performance pursuant to the economic loss doctrine when the viability of the contract claim is in dispute.  The Court finds that fraudulent performance is pled with sufficient particularity and that, therefore, that claim may proceed as an alternative basis for recovery.  If it later appears that the contract claims will provide Plaintiff with the relief he is seeking, the parties may ask the Court to revisit the issue whether the economic loss doctrine applies.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to dismiss [Docket Item 2] Count V because Plaintiff has pled fraudulent performance with sufficient particularity and in the alternative.  This denial is without prejudice to Defendants' right to challenge the fraud claim again on a properly-presented motion for summary judgment.  However, the Court will grant the motion insofar as the Court finds that Plaintiff has not pled fraudulent inducement with sufficient particularity under Fed. R. Civ. P. 9(b).

The accompanying Order will be entered.


**December 21, 2006**                    **s/ Jerome B. Simandle**
Date                                     Jerome B. Simandle
                                         U.S. District Court